UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

WILLIAM C. BRODER,

Debtor.

Chapter 13
Case No. 18-20417

**ORDER SUSTAINING STATE TAX ASSESSOR'S
OBJECTION AND DENYING CONFIRMATION**

This matter came before the Court on the Objection of State Tax Assessor to Confirmation of the Debtor's Chapter 13 Plan and Request for Enlargement of Time to File the Objection (the "MRS Objection") (Docket Entry ("D.E.") 60) filed by Jerome D. Gerard, the State Tax Assessor of the State of Maine Bureau of Revenue Services ("MRS").[1] MRS objected to confirmation of the Debtor's Chapter 13 Plan (D.E. 3) (the "Plan") on several grounds, including its assertion that the Debtor did not propose the Plan in good faith, as allegedly evidenced by his intention to retain a 1981 Robalo R250 boat, accompanying motor and trailer (collectively, the "Boat") to the detriment of his creditors. At a July 2, 2019 hearing, MRS suggested that the good faith issue under 11 U.S.C. § 1325(a)(3) could be decided on briefs in advance of other objections to confirmation raised by MRS and the Chapter 13 Trustee (the "Trustee") because the issue does not involve any material factual disputes and can be decided as a matter of law.[2] Initially, counsel for the Debtor suggested evidence might be necessary but then agreed to submit the matter for ruling on briefs.

---

[1] The MRS Objection included a request for authority to file the objection after the deadline for objections had expired, which request was orally granted at a hearing held on April 24, 2019 (D.E. 64).

[2] References to statutory section numbers are to the Bankruptcy Reform Act of 1978, as amended, at 11 U.S.C. § 101, *et seq.* (the "Code").

In addition to relevant case law, the Court reviewed the MRS Objection, the State Tax Assessor's Brief in Support of His Code Section 1325(a)(3) Objection to Debtor's Plan (D.E. 78) (the "MRS Brief"), the Debtor's Brief in Support of Plan Confirmation (D.E. 79) (the "Debtor's Brief"), the State Tax Assessor's Response to the Debtor's Brief in Support of Plan Confirmation (D.E. 81) (the "MRS Reply"), and certain schedules filed in this case and referenced by the parties.[3]  For the reasons set forth more fully below, the Court hereby sustains MRS's objection and confirmation of the Plan is hereby denied.

## I.    Background

The Debtor filed his chapter 13 bankruptcy case on July 26, 2018 and, on the same day, filed his schedules and statement of financial affairs.  The version of Schedule I filed at the commencement of the case (D.E. 1) ("Original Schedule I") shows monthly income of $5,175.00. The Debtor populated the column for non-filing spouse income with the abbreviation "N/A". Schedule J (D.E. 1) ("Original Schedule J") lists $4,721.00 in monthly expenses resulting in monthly net income of $454.00.

The day after commencing his case, the Debtor filed the Plan, in which he proposes to make sixty monthly payments in the amount of $455.00.  The Plan does not list any priority claims but does contain a request to value the Boat at $9,200.00 for § 506(a) purposes and to limit the

---

[3] The Court directed MRS and the Debtor to submit briefs in support of their respective positions within 28 days of the July 2, 2019 hearing (D.E. 77).  The Court intended the briefing to be simultaneous in nature and, therefore, did not set a deadline for, and did not expect, reply briefs.  MRS filed the MRS Brief on July 22, 2019—well in advance of the deadline.  The Debtor timely filed his brief eight days later.  The Debtor's Brief responded to the arguments raised in the MRS Objection by referencing a revised proposed confirmation order which changed a number of material Plan terms and a revised Schedule J which drastically reduced the Debtor's monthly expenditures.  Both of these documents were filed at the same time the Debtor filed his brief.  MRS then filed the MRS Reply in which it acknowledged that the Court had not afforded it an opportunity to file a response but argued that due process considerations required that MRS be allowed to address the new facts raised by the Debtor.  Accordingly, the MRS Reply contained not only MRS's response to this new information, but also a request for leave to file the reply.  That request is hereby granted and the MRS Reply, and the arguments contained therein, are properly before this Court and have been considered in the process of making this decision.

secured portion of Norway Savings Bank's ("NSB") $15,319.00 claim to that figure. NSB timely objected to confirmation (D.E. 16), arguing, among other things, that the Boat is undervalued by the Plan. Following an evidentiary hearing, the Court issued an order on March 4, 2019 (D.E. 46) (the "NSB Order"), sustaining NSB's objection and valuing the Boat at $15,500.00.

On April 10, 2019, MRS filed the MRS Objection in which it argues that the Plan is not proposed in good faith because the Debtor intends to the retain the Boat, now valued at $15,500, while paying general unsecured creditors a dividend of just 6.5%. MRS also argued that the Plan does not earmark any funds for payment of MRS's priority unsecured claim in the amount of $7,914.3 (the "MRS Claim") but that issue has since been resolved and is not currently before the Court.

At the June 19, 2019 hearing on confirmation, Debtor's counsel reported that the Debtor's wife recently secured employment and that the Debtor was attempting to gather information necessary to file updated schedules. The Court continued the hearing to July 2, 2019 to allow the Debtor to negotiate with MRS and the Trustee regarding their objections.

On July 1, 2019, the Debtor filed new versions of Schedules I and J (D.E. 74) ("Supplemental Schedules I and J") showing his post-petition income and expenses. Although Supplemental Schedule I indicates that the Debtor's post-petition gross income increased from $5,595.00 to $5,710.09, his payroll deductions also increased from $420.00 to $1,156.00, resulting in reduced monthly income of $4,554.09. Notwithstanding this setback, the overall monthly income of the Debtor's household increased post-petition from $5,175.00 to $6,189.74 as a result of $1,635.65 in take-home pay now earned by the Debtor's previously unemployed wife.

Despite the post-petition increase in the household's monthly income of $1,014.74, Supplemental Schedule J indicates a corresponding increase in post-petition expenses so that the

monthly net income grew by only $15.74, to $469.74.  While most of the expenses previously listed in Original Schedule J were adjusted upward in Supplemental Schedule J—some of them significantly—the Debtor completely eliminated the $110.00 previously budgeted for monthly entertainment expenses.  A note at the bottom of Supplemental Schedule J stated, "In lieu of recreation, Debtor proposes retention and payment of the secured claim on his boat."

At the hearing on July 2, 2019, a number of objections endured but the parties identified the issue of the Debtor's good faith under § 1325(a)(3) as one which could be resolved on briefs and without the more burdensome proceedings other objections might necessitate.  The Court ordered the parties to submit their papers on or before July 30, 2019.

MRS filed its brief on July 22, 2019; well in advance of the July 30, 2019 deadline.  The MRS Brief questions the credibility of the Debtor's Supplemental Schedules I and J and argues that the failure to include the payments necessary to retain the Boat on Supplemental J evidence a budgeting shortfall with respect to Plan payments.  MRS further argues that the Plan's failure to account for the full value of NSB's claim, as set forth in the NSB Order, or the MRS Claim, evidences the Debtor's lack of good faith and underscores the ability to fund the Plan.

The Debtor's Brief, filed timely but eight days after MRS filed its brief, attaches a revised proposed confirmation order proposing to increase plan payments to $970.00 from $455.00 beginning with the thirteenth month and continuing throughout the life of the Plan (the "Proposed Confirmation Order").  The Proposed Confirmation Order also proposes to allow NSB's secured claim in the amount of $15,500 (the "NSB Claim") and repay that claim at 6% interest, in accordance with the NSB Order.  It also proposes to pay the MRS Claim in full over the course of 27 months.

Contemporaneously with his Brief, the Debtor also filed yet another version of Schedule J (D.E. 78) (the "Amended Schedule J"), his third, which drastically reduces the Debtor's expenses in an effort to establish his ability to afford the proposed $525 increase in Plan payments. While Supplemental Schedule J adjusts almost every expense upward, Amended Schedule J does the opposite; either returning expenses to the lower amounts listed in Original Schedule J, or splitting the difference between the lower expenses shown in Original Schedule J and the higher expenses listed in Supplemental Schedule J. The entertainment budget remains nonexistent, however, with the Debtor continuing to claim that funds he would otherwise have used for entertainment would, instead, be used to maintain and operate the Boat. Amended Schedule J reduces the household expenses to such a degree that the Debtor's net income is now $969.74, or more than double the net income of $469.74 shown in the Supplemental Schedule J, filed just 29 days earlier.

On August 2, 2019, MRS filed the MRS Reply, arguing that Amended Schedule J and the Proposed Confirmation Order are insufficient to rebut the allegations of bad faith. While the Plan, as amended by the terms contained in the Proposed Confirmation Order, now provides for payment of the NSB Claim and the MRS Claim in full, as well as a 14% distribution to general unsecured creditors, MRS maintains that the Debtor's proposed retention of the Boat still unfairly prejudices creditors because the general unsecured creditors would receive a meaningfully larger distribution and the MRS Claim would be paid much faster if the Debtor did not continue to insist on repaying the NSB Claim. In addition, MRS argues that Amended Schedule J raises serious questions about whether the Debtor can even afford to make the increased Plan payments in light of the drastic reduction of expenses and continued absence of Boat payments.

The Debtor concedes that there were a number of errors on his schedules but denies that there was any "gerrymandering." He claims to have fully and completely disclosed his assets and

5

liabilities and he asserts that the significant reduction in expenses reflected in Amended Schedule J merely demonstrates an effort to tighten the household budget. He further argues that, although he cannot afford to fund the Plan without contributions from his wife, she is entitled to spend her own income funding recreational expenses as she sees fit and, therefore, this Court cannot preclude her from spending her own money to make payments on the Boat.

## II.    The Law

The party objecting to the confirmation of a chapter 13 plan bears the burden of establishing evidence in support of its objection. *In re Bradley*, 567 B.R. 231, 236 (Bankr. D. Me. 2017). If that is successfully done, as MRS has done so here, the burden shifts to the debtor who must show, by a preponderance of the evidence, that the plan was proposed in good faith, in accordance with § 1325(a)(3). *In re Martinelli*, 482 B.R. 537, 542 (Bankr. D.S.C. 2012). The term "good faith" is not defined by the Code and courts describe the standard as an ambiguous one requiring judgments regarding a debtor's values and lifestyles. *In re Bradley*, 567 B.R. 231, 236 (Bankr. D. Me. 2017) (*quoting*, *Sullivan v. Solomini (In re Sullivan)*, 326 B.R. 204, 212 (1st Cir. B.A.P. 2005)); *In re Sutliff*, 79 B.R. 151, 156 (Bankr. N.D.N.Y. 1987). In making such a determination, courts in the First Circuit conduct a fact-intensive inquiry in which they consider the totality of the circumstances. *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 82 (1st Cir. 2012); *Bradley*, 567 B.R. at 236; *In re Pappas*, 2019 WL 4554511, at *1 (Bankr. D. Me. Sept. 19, 2019). The relevant factors vary from case to case but "[t]he ultimate inquiry is 'whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability.'" *Id.* (*quoting*, *Sullivan*, 326 B.R. at 212).

At least one court has held that the retention of a luxury item cannot form the basis for a finding of bad faith under § 1325(a)(3) because the "disposable income test," as laid out in §§

6

1325(b)(2), 1325(b)(3) and 707(b)(2), permits a debtor to deduct as "reasonable necessary expenditures" the average monthly payments on *all* secured debts, without limiting the *kind* of secured debt. *See, e.g., Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1134-1135 (9th Cir. 2013). This Court, however, shares the view of other courts that §§ 1325(a)(3) and 1325(b) have different purposes and, therefore, a debtor contributing all of his or her disposable income under § 1325(b) may still be found to have proposed his or her plan in bad faith if, when viewed in the context of the facts of a particular case, the retention of a luxury item suggests that the debtor is not making an honest effort to repay his or her creditors. *See, e.g., In re Wrobel*, 525 B.R. 211, 218 (Bankr. W.D.N.Y. 2015); *Bradley*, 567 B.R. at 239.

In some instances, retention of a luxury item may not conflict with the statutory mandates of, and public policies behind, the Code. However, when payments on luxury items are disproportionate in size to plan payments and general unsecured creditors are receiving minimal distributions, a finding of bad faith is possible, if not likely. *Sutliff*, 79 B.R. 151 at 157-159 ("Debtors should not be allowed to continue in the lifestyle that drove them to file bankruptcy at the expense of their creditors."). And merely shifting luxury expenses to a non-filing spouse will not necessarily save a plan under § 1325(a)(3). *See, In re Martinelli,* 482 B.R. 537 (Bankr. S.C. 2012).

> The Court finds it 'simply inappropriate and unfair to the unsecured creditors to allow luxury items to be paid for through the expedient ploy of budgetary allocation when, in fact, the Debtor directly or indirectly benefits' from those luxuries. *McNichols*, 249 B.R. at 172. Even if Debtor no longer uses the watercraft, as he asserts, his spouse and child presumably still do, and he most likely derives enjoyment from their use of these items. This enjoyment is coming at the expense of Debtor's unsecured creditors. This Court cannot ignore the fact that Debtor seeks to discharge a significant amount of unsecured debt, much of which Debtor testified was incurred for the benefit of the family, while, at the same time, his wife attempts to keep ownership of a $39,000 boat and a $12,000 jet ski they purchased jointly. As noted by the Trustee, if the $816 paid a month to keep these items was added to the plan payment, Debtor would pay almost 80% of the unsecured debt he

7

> owes, which again was incurred mostly for the family's benefit. While the Court stops short of announcing a *per se* rule against a non-filing spouse assuming complete ownership of and continuing to make payments on items purchased by a Chapter 13 debtor and a non-filing spouse, it does find that the plan here falls short of the good faith requirement set forth in Section 1325(a).

*Martinelli*, 482 B.R. at 545-546. Furthermore, in the course of carefully constructing Schedules I and J so as to allocate to a non-filing spouse the expenses of luxury items enjoyed by the entire family, a debtor may render Schedules I and J sufficiently unreliable as to warrant a finding of bad faith premised solely on the lack of truthful disclosure. *In re McNichols*, 254 B.R. 422, 431-432 (Bankr. N.D.Ill. 2000) (holding that a plan was not filed in good faith where, rather than making a good faith effort to reduce her expenses, the debtor attempted to shift certain expenses to her spouse by filing inaccurate and untruthful Schedules I and J).

### III.    Analysis

The fundamental problem in this case lies with the various schedules I and J. First, there is a credibility concern. While debtors often amend schedules to correct errors or omissions or to reflect changes to their income and or expenses driven by a change in employment or a need to slightly adjust their plan payments, in this case, the Court is troubled by an Amended Schedule J filed contemporaneously with the Debtor's rebuttal to an MRS brief calculating a budgeting shortfall and showing more than double the monthly net income exhibited in Supplemental Schedule J submitted less than one month earlier. The Debtor attempts to explain this dramatic decrease in expenditures and corresponding increase in monthly net income as a post-petition "[t]ightening of his budgetary belt" but this is the third version of Schedule J the Debtor filed and both the timing of, and disparities between, those three versions certainly suggest that the Debtor is reflexively tossing out numbers designed to thwart MRS's objections.

Next, the Debtor's math is cloudy. He argues that Amended Schedule J demonstrates the feasibility of an increased Plan payment which would provide for full payment of the NSB Claim

8

and the MRS Claim as well as a 14% distribution to general unsecured creditors. Putting aside for the moment the optics of the Debtor's proposal to retain the Boat while paying just 14% to general unsecured creditors, the Court shares MRS's concern that Amended Schedule J continues to demonstrate a budgetary shortfall because it fails to reflect the monthly payment for the Boat even though it appears that Supplemental Schedule I and Amended Schedule J include all of the non-filing spouse's income and expenses. With that expense unaccounted for, it is difficult to see how the Debtor can fund the Plan, as amended by the Proposed Confirmation Order.

Between the unreliable financial information provided by the Debtor and his apparent inability to propose a feasible plan in the face of his stubborn refusal to forego the Boat, the Court finds that the Debtor has not met his burden of proof with respect to § 1325(a)(3). Accordingly, the Court will sustain MRS's objection. Had the Debtor requested an evidentiary hearing, instead of agreeing to proceed on briefs, or made the adjustments to his schedules and Plan earlier, he may have been able to clear up any credibility issues and clarify the confusion regarding the source of funds to be used to pay the NSB Claim. Without the benefit of that clarification, the record does not support a finding of good faith.

Having determined that the Debtor failed to meet his burden of proof purely from a disclosure perspective, there is no need to decide whether, under these particular facts, the Debtor could retain his interest in the Boat and still satisfy § 1325(a)(3). In the event the Debtor pursues confirmation on a modified plan, however, the Court warns the Debtor that the facts, as presented, weigh against confirmation on § 1325(a)(3) grounds. The Debtor acquired more than $170,000 in general unsecured debt pre-petition; much of which is credit card debt. He now seeks to repay just 14% of that debt and delay full payment of the MRS claim while continuing to enjoy use of a luxury item. The proposed payments on the Boat are equal to approximately one third of the

9

proposed Plan payments. If the Debtor surrendered the Boat, he could pay general unsecured creditors as much as 19% to 21% of their claims, depending on the size of NSB's deficiency claim after liquidating its collateral. These facts strongly support an inference that the Debtor lived above his means pre-petition and now seeks to discharge a large share of the debt accruing as a result of his financial choices while continuing to enjoy a lifestyle his income does not support.

### IV.     Conclusion

WHEREFORE, MRS's objection to confirmation is SUSTAINED and confirmation of the Plan is hereby DENIED. The Debtor shall file and notice a new plan for hearing within 21 days.


Dated:   October 3, 2019                             /s/ Peter G. Cary
                                                     Judge Peter G. Cary
                                                     United States Bankruptcy Court